## Kuhn's Estate.

*Will—Legacy—Living with testator at the time of his death.*

Testator shortly before his death made a will by which he bequeathed to a legatee the sum of $20,000 "if he shall be living with me at the time of my death, and in consideration therefor." This bequest was made in pursuance of a contract between the testator, the father of the legatee, and the legatee himself, by which the legatee was to act as the testator's companion in consideration of a legacy for the sum mentioned. The testator's usual place of living in Europe was at Nice. The contract and the will were made in Paris at a time when the legatee and his father were visiting the testator at his hotel in Paris and were staying with him at his expense. Testator died shortly thereafter at Paris, without returning to his home in Nice. *Held,* that the legatee was living with the testator at the time of the latter's death within the meaning of the will, and that he was entitled to the legacy.

Argued March 24, 1902.   Appeal, No. 384, Jan. T., 1901, by Hartman Kuhn Evans and Ellen L. Mahan, from decree of O. C. Phila. Co., Oct. T., 1900, No. 403, sustaining exceptions to adjudication in Estate of Charles Kuhn, Deceased.   Before McCollum, C. J., Dean, Fell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Exceptions to adjudication of Hanna, P. J.

Ferguson, J., filed the following opinion :

The testator by his will made the following bequest, which is the subject of the present controversy: " To Jean Charles Henri Thouvenin, son of Doctor Julien Thouvenin, of Nice, if he shall be living with me at the time of my death, and in consideration therefor, I give and bequeath the sum of Twenty thousand ($20,000,) Dollars."   This bequest was made in pursuance of a contract between the testator, the father of the legatee, and the legatee, as follows : " I place my son Henri at the disposition of Mr. Kuhn, he will be ordered to live with him and keep him company.   Mr. Kuhn agrees to make to my son a legacy in the sum of 100,000 francs to be specified in his will, it being understood that if my son leaves Mr. Kuhn of his own free will or if Mr. Kuhn has cause of complaint against him this contract will be broken."   This document was enclosed in an envelope and indorsed by the testator in the words following: " Agreement between J. Thouvenin, H. Thouvenin and Charles Kuhn 15 Oct./99 about H. Thouvenin who will live with Mr. Kuhn as a companion."   The facts are that the testator, who was a native and citizen of Pennsylvania, had for many years prior to his death been living at Nice, in the Republic of France.   His nephew, Hartman Kuhn Evans, had been living with him as a companion for several years prior to the summer of 1899, when Mr. Evans married and left. The testator had a villa at Vichy, where he spent the summers, afterwards passing a month or two in Paris.   The Thouvenin family, consisting of Dr. Thouvenin, his wife, and two sons, one of them being Henri, were in the habit of visiting him at his villa in Vichy.   This they did in the summer of 1899, and afterwards, about the end of September, accompanied the testator to Paris as his guests.   They occupied apartments at the

same hotel and all took their meals with the testator in his dining room.   This state of things continued until the death of the testator, on October 28, 1899.

There is no doubt but that the legacy is conditional upon the legatee living with the testator at the time of his death. The only question is, was the condition fulfilled ?   The services to be rendered were those of a companion.   It is admitted that from the time of the making of the original contract down to the time of the testator's death, the legatee did live in the same house with him and took his meals at the testator's table.   It was claimed, however, that while this was so, the legatee was then living with the testator as his guest and not as a companion, and that it was not contemplated to commence the other relation until the testator returned to his villa at Nice.   There is not a particle of evidence in the case to support this contention, and all the facts would seem to indicate the contrary. No place was fixed for the rendering of the services and no place could well be fixed.   The services were to be that of a companion, and this employment necessarily implies that they were not to be rendered at any particular place, but anywhere that the testator might choose to go.   The contract, which is the foundation of the bequest, is in the present tense.   " I place my son Henri at the disposition of Mr. Kuhn," etc., as if it were a thing that was then done, and not something to be done in the future.   The fact that the testator, in pursuance of the contract, made his will, giving the legacy agreed upon to the claimant " if he shall be living with me at the time of my death " indicates that he was then living with him, and the legacy was given conditional upon his continuing to do so ; besides on the day before his death the testator wrote to his servant at his house, giving some instructions with reference thereto, and, among other things, informed him that " M. Henri would dine and sleep at the house."   Upon the whole case we think it is evident that the condition upon which the legacy was given has been fulfilled, and that the legacy is good and valid.

The exceptions are sustained.

*Error assigned* was decree of the court.

*Rowland Evans*, for appellant.—We submit that the plain

prima facie meaning of this phrase, "living with me," is "making his home with me," not merely sojourning or visiting. My friend who dines with me in my home, or who pays me a visit of a few days or a few weeks, during such period is, of course, "living with me " in a certain sense. He is indeed "living," he is " with me," therefore, "he is living with me." But if I say that such a person is "living with me " something more than a mere temporary and transient visit is implied. It is an abiding of indefinite length—a home living—that is clearly intended. And this prima facie meaning is strengthened in the present case by the following words " in consideration therefor."

*Victor Guillou,* for appellee, was not heard, but in his printed argument said.—" Living with me at the time of my death," the words used by the testator in his will, are held by the appellant to mean something, indeed, very considerably, more than the admitted facts show to have existed at the time of testator's death or the terms of the bequest set forth. In other words, that the appellee was not "living " with the testator on the dread day of the latter's death, although he occupied a room in testator's house, took all of his meals with testator, and made his home with him solely at testator's expense.

It is difficult, indeed, to see how two normal, cleanly gentlemen could be " living " together in any closer or more intimate relation. The learned counsel for the appellant also states that the prima facie meaning of the phrase "living with me " means " making his home with me," and conceding that to be its true definition, how could anyone "make his home " with anyone else of the same sex further than sleeping and eating and remaining in that home with its proprietor, and at his expense?

PER CURIAM, May 19, 1902:

The decree of the court in this case is affirmed on the opinion of Judge FERGUSON.